**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| EMMA SETTLE, Individually and for Others Similarly Situated<br><br>v.<br><br>TRINITY HEALTH SYSTEM | Case No. 2:25-cv-1231<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Emma Settle (Settle) brings this class and collective action to recover unpaid wages and other damages from Trinity Health System (Trinity).

2. Settle worked for Trinity in Ohio.

3. Trinity paid Settle and the other Patient Care Employees (defined below) by the hour.

4. Settle and the other Patient Care Employees regularly work more than 40 hours in a week.

5. But Trinity does not pay Settle and other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

6. Instead, Trinity automatically deducts 30 minutes a day from these employees' hours for so called "meal periods" (Trinity's "auto-deduction policy").

7. Settle and the other Patient Care Employees are thus not paid for this time.

8. But Settle and the other Patient Care Employees do not actually receive *bona fide* meal periods.

9. Instead, Trinity requires Settle and the other Patient Care Employees to remain on duty and perform compensable work throughout their shifts, including during "meal periods," and regularly subjects them to work interruptions during their "meal periods."

10. Additionally, Trinity pays Settle and other Patient Care Employees non-discretionary bonuses, including sign on bonuses, that it excludes from these employee's regular raters of pay for overtime purposes (Trinity's "bonus pay scheme").

11. Trinity's auto-deduction policy and bonus pay scheme violates the Fair Labor Standards Act (FLSA) and Ohio Minimum Fair Wage Standards Act (OMFWSA) by depriving Settle and the other Patient Care Employees of wages, including overtime wages at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 a workweek.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over Trinity because it is an Ohio corporation.

15. Venue is proper because Trinity maintains its principal place of business in Steubenville, Jefferson County, Ohio, which is in this District and Division. 28 U.S.C. § 1391(a).

## PARTIES

16. Trinity employed Settle as a registered nurse from approximately September 2024 until December 2024.

17. Throughout her employment, Trinity classified Settle as non-exempt and paid her by the hour.

18. Throughout her employment, Trinity subjected Settle to its auto-deduction policy and bonus pay scheme.

19. Settle's written consent is attached as **Exhibit 1.**

20. Settle brings this class and collective action on behalf of herself and similarly situated Trinity employees.

21. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly-paid, direct patient care Trinity employees who received a meal period deduction and/or who were paid a bonus not included in their regular rate of pay during the past three years through final resolution of this action (the "FLSA Collective Members").**

22. The putative Ohio class of similarly situated employees is defined as:

> **All hourly-paid, direct patient care Trinity employees who received a meal period deduction and/or who were paid a bonus not included in their regular rate of pay during the past three years through final resolution of this matter (the "Ohio Class Members").**

23. The FLSA Collective Members and the Ohio Class Members are collectively referred to as the "Patient Care Employees."

24. Trinity is an Ohio corporation with its principal place of business in Steubenville, Ohio.

25. Trinity may be served with process through its registered agent: **CT Corporation, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219**, or wherever they may be found.

## FLSA COVERAGE

26. At all relevant times, Trinity was an "employer" within the meaning of the FLSA. 29 § 203(d).

27. At all relevant times, Trinity was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28. At all relevant times, Trinity was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. §203(s)(1).

29. At all relevant times, Trinity had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30. At all relevant times, Settle and the other Patient Care Employees were Trinity's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31. At all relevant times, Settle and the other Patient Care Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

32. Trinity "provides care to a service area of just over 200,000 individuals … [and] offers a full array of acute and outpatient services on two campuses."[1]

33. To meet its business objectives, Trinity employs workers, including Settle and the other Patient Care Employees, to care for patients.

34. For example, Trinity has employed Settle as a registered nurse in and around Steubenville, Ohio from approximately September 2024 until December 2024.

35. As a registered nurse, Settle's primary duties encompassed coordinating and providing patient care, administering treatment and medications.

36. Throughout her employment, Settle regularly worked more than 40 hours a workweek.

[1] https://trinityhealth.com/who-we-are/ (last visited October 22, 2025).

37. Indeed, Settle typically worked approximately 12 hours a day and 4 days a week "on the clock" (48 hours a workweek).

38. Trinity pays Settle approximately $30 an hour.

39. Likewise, the other Patient Care Employees typically work approximately 12 hours a day for 4 days a week (48 hours a workweek) "on the clock."

40. And Settle and the other Patient Care Employees are required to report their "on the clock" hours worked via the timekeeping system Trinity selects and controls.

41. Trinity subjects Settle and the other Patient Care Employees to its common auto deduction policy.

42. Specifically, Trinity automatically deducts 30 minutes a workday from Settle's and the other Patient Care Employees recorded hours and wages for so called "meal periods."

43. Trinity automatically deducts this time regardless of whether Settle and the other Patient Care Employees actually receive full, uninterrupted, 30-minute meal periods.

44. Trinity simply assumes Settle and the other Patient Care Employees receive *bona fide* meal periods each shift they work.

45. But Settle and the other Patient Care Employees do not actually receive *bona fide* meal periods.

46. Instead, Trinity requires Settle and the other Patient Care Employees to remain on duty and perform compensable work throughout their shifts for Trinity's predominant benefit, including during their "meal periods."

47. And Trinity subjects Settle and the other Patient Care Employees to work interruptions during their unpaid "meal periods."

48. Thus, Settle and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal periods."

49. Rather, during their unpaid "meal periods," Settle and the other Patient Care Employees are forced to substantially perform their regular patient care job duties and responsibilities.

50. Thus, Settle and the other Patient Care Employees routinely spend their unpaid "meal periods" performing work for Trinity—not these employees'—predominant benefit.

51. This unpaid time is compensable under the FLSA and Ohio law because Trinity knew, or should have known, that (1) Settle and the other Patient Care Employees were performing unpaid work during their "meal periods," (2) they were interrupted with work duties during attempted "meal period," (3) they were not completely relieved of all duties during "meal periods," (4) they entirely skipped "meal periods" due to work demands, (5) "meal periods" were less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained on Trinity's premises or under Trinity's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular patient care duties for Trinity's predominant benefit.

52. Trinity fails to exercise its duty as Settle's and the other Patient Care Employees' employer to ensure these employees are not performing work that Trinity does not want performed during their unpaid "meal periods."

53. And Trinity knows Settle and the other Patient Care Employees routinely perform work "off the clock" during their unpaid "meal periods" because Trinity expects and requires them to do so.

54. Settle and the other Patient Care Employees have complained to Trinity's management and their supervisors about being forced to work during their unpaid "meal periods."

55. Thus, Trinity required, requested, suffered, or permitted Settle and the other Patient Care Employees to work during their unpaid "meal periods."

56. Despite accepting the benefits, Trinity does not pay Settle and the other Patient Care Employees for the compensable work they perform during their automatically deducted "meal periods."

57. In addition, Trinity does not pay Settle and the other Patient Care Employees at the required premium overtime rates for all hours worked in excess of 40 hours in a workweek.

58. Instead, Trinity pays Settle and the other Patient Care Employees under its bonus pay scheme.

59. Specifically, Trinity agrees to pay and subsequently pays Settle and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, based on criteria determined by Trinity.

60. But it excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

61. For example, on December 12, 2024, Trinity paid Settle the first $2,500 installment of her sign on bonus:

| Earnings | | | | |
|---|---|---|---|---|
| Description | Hours | SHF | Rate | Current |
| BONUS PAY | 0.000 | | | 2500.00 |

62. But Trinity did not include this non-discretionary sign-on bonus in her regular rate for that pay period (nor any other pay period):

| Earnings | | | | |
|---|---|---|---|---|
| Description | Hours | SHF | Rate | Current |
| REGULAR | 46.750 | | 30.00 | 1402.50 |
| OVERTIME | 4.250 | | 45.00 | 191.25 |
| HOL OVT | 8.500 | | 45.00 | 382.50 |
| PDO-PERS | 0.750 | | 30.00 | 22.50 |
| PDO-SICK | 12.000 | | 30.00 | 360.00 |
| PDO-VAC | 8.000 | | 30.00 | 240.00 |

63. Thus, under its bonus pay scheme, Trinity does not pay Settle and the other Patient Care Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

## CLASS AND COLLECTIVE ALLEGATIONS

64. Settle brings her claims as a collective action under Section 216(b) of the FLSA and as a class action under the OMFWSA pursuant to FED. R. CIV. P. 23 on behalf of herself and the other Patient Care Employees.

65. Like Settle, the other Patient Care Employees are victimized by Trinity's auto deduct policy and/or bonus pay scheme.

66. Other Patient Care Employees worked with Settle and indicated they were paid in the same or similar manner under Trinity's auto deduct policy and/or bonus pay scheme.

67. Based on her experience with Trinity, Settle is aware Trinity's auto deduct policy and bonus pay scheme were imposed on other Patient Care Employees.

68. The Patient Care Employees are similarly situated in the most relevant respects.

69. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

70. Therefore, the specific job titles or locations of the Patient Care Employees do not prevent class or collective treatment.

71. Rather, Trinity's bonus pay scheme renders Settle and the other Patient Care Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

72. Trinity's records reflect the number of hours the Patient Care Employees recorded working "on the clock" each week.

73. Trinity's records reflect it automatically deducted 30 minutes a workday the Patient Care Employees.

74. Trinity's records also show it paid Settle and the other Patient Care Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

75. The back wages owed to Settle and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

76. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Trinity's records, and there is no detraction from the common nucleus of liability facts.

77. Therefore, the issue of damages does not preclude class or collective treatment.

78. Settle's experiences are typical of the experiences of the other Patient Care Employees.

79. Settle has no interest contrary to, or in conflict with, the other Patient Care Employees that would prevent class or collective treatment.

80. Like each Patient Care Employee, Settle has an interest in obtaining the unpaid wages owed under federal and Ohio law.

81. Settle and her counsel will fairly and adequately protect the interests of the Patient Care Employees.

82. Settle retained counsel with significant experience in handling complex class and collective action litigation.

83. Absent this class and collective action, many Patient Care Employees will not obtain redress for their injuries, and Trinity will reap the unjust benefits of violating the FLSA and OMFWSA.

84. Further, even if some of the Patient Care Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

85. Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and Trinity.

86. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

87. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

88. Among the common questions of law and fact are:

a. Whether Trinity imposed its auto-deduction policy and deprived Settle and the other Patient Care Employees of wages for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted;

b. Whether Trinity knew, or had reason to know, Settle and the other Patient Care Employees were requested, suffered, or permitted, to work "off the clock" during their unpaid "meal periods";

c. Whether Trinity failed to pay Settle and the other Hourly Workers overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock";

d. Whether Trinity paid the Patient Care Employees non-discretionary bonuses;

e. Whether Trinity failed to include non-discretionary bonuses in calculating the Patient Care Employees' regular rates of pay for overtime purposes;

f. Whether Trinity failed to pay the Patient Care Employees overtime wages at the required premium—based on all remuneration—for all overtime hours worked;

g. Whether Trinity's decision not to pay the Patient Care Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

h. Whether Trinity's violations were willful.

89. As part of its regular business practices, Trinity intentionally, willfully, and repeatedly violated the FLSA with respect to Settle and the other Patient Care Employees.

90. There are many similarly situated Patient Care Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

91. The Patient Care Employees are known to Trinity, are readily identifiable, and can be located through Trinity's business and personnel records.

**TRINITY'S VIOLATIONS WERE WILLFUL**

92. Trinity knew it employed Settle and the other Patient Care Employees.

93. Trinity knew it was subject to the FLSA's overtime provisions.

94. Trinity knew the FLSA required it to pay non-exempt employees, including Settle and the other Patient Care Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

95. Trinity knew Settle and each Patient Care Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Trinity's timekeeping system.

96. Trinity knew it failed to provide the Patient Care Employees with *bona fide*, uninterrupted meal periods.

97. Trinity knew the Patient Care Employees did not actually receive *bona fide*, uninterrupted meal periods.

98. Trinity knew the Patient Care Employees regularly worked during their unpaid "meal periods."

99. Trinity knew it required, requested, suffered, or permitted the Patient Care Employees to work during their unpaid "meal periods."

100. Trinity knew the Patient Care Employees spent their unpaid "meal periods" substantially performing their regular job duties for Trinity's predominant benefit.

101. Indeed, Patient Care Employees complained to Trinity's management, HR, and/or their supervisors about being forced to work during their unpaid "meal periods."

102. In other words, Trinity knew, should have known, or recklessly disregarded the fact that it did not pay the Patient Care Employees for all hours they performed compensable work.

103. Trinity knew Settle and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

104. Trinity knew it paid Settle and the other Patient Care Employees non-discretionary bonuses.

105. Trinity knew it was required to include these non-discretionary bonuses in their regular rates of pay.

106. Trinity knew these non-discretionary bonuses were not included in Settle's and the other Patient Care Employees' regular rates of pay for overtime purposes.

107. And Trinity knew the FLSA requires it to pay Settle and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

108. Trinity's failure to pay Settle and the other Patient Care Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

109. Trinity knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Settle and the other Patient Care Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

**<u>COUNT I</u>**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVE)**

110. Settle brings her FLSA claim as a collective action on behalf of herself and the other Patient Care Employees pursuant to 29 U.S.C. § 216(b).

111. Trinity violated, and is violating, the FLSA by employing non-exempt employees such as Settle and the other Patient Care Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek, including those worked during their unpaid "meal periods."

112. Trinity's unlawful conduct harmed Settle and the other Patient Care Employees by depriving them of the overtime wages they are owed.

113. Accordingly, Trinity owes Settle and the other Patient Care Employees the difference between the wages actually paid and the required overtime wages actually earned.

114. Because Trinity knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Trinity owes Settle and the other Patient Care Employees these wages for at least the past 3 years.

115. Trinity is also liable to Settle and the other Patient Care Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

116. Finally, Settle and the other Patient Care Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES UNDER THE OMFWSA**
**(OHIO CLASS)**

117. Settle brings her OMFWSA claim on behalf of herself and the other Ohio Class Members pursuant to FED. R. CIV. P. 23.

118. The conduct alleged in this Complaint violates the OMFWSA. R.C. 4111.01, *et seq*.

119. At all relevant times, Trinity has been an "employer" within the meaning of the OMFWSA. *See* R.C. 4111.03(D)(2).

120. At all relevant times, Settle and each Ohio Class Member have been covered "employees" within the meaning of the OMFWSA. *See* R.C. 4111.03(D)(3).

121. The OMFWSA requires employers, like Trinity, to pay employees, such as the Ohio Class Members, overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in workweek. *See* R.C. 4111.03(A).

122. The Ohio Class Members are entitled to overtime wages under the OMFWSA for all hours worked in excess of 40 hours in a 7-day workweek.

123. Trinity violated, and is violating, the OMFWSA by employing non-exempt employees (Settle and the other Ohio Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular hourly rates of pay—based on all remuneration—for all hours worked in excess of 40 in a 7-day workweek, including those worked "off the clock" before and after their shifts. *See* R.C. 4111.03(A).

124. Trinity's unlawful conduct harmed Settle and the Ohio Class Members by depriving them of the premium overtime wages they are owed.

125. Accordingly, Settle and the other Ohio Class Members are entitled to recover the difference between the wages paid and the wages actually earned, plus reasonable attorneys' fees and costs incurred in this action. *See* R.C. 4111.10(A).

## JURY DEMAND

126. Settle demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Settle, individually, and on behalf of the other Patient Care Employees, seeks the following relief:

a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members, allowing them to join this collective action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action and certifying the putative Ohio class pursuant to FED. R. CIV. P. 23;

c. An Order designating Settle and her counsel to represent the interests of the putative Ohio class;

d. An Order finding Trinity liable under the FLSA for unpaid overtime wages due to Settle and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Trinity liable under the OMFWSA for unpaid overtime wages due to Settle and the Ohio Class Members;

f. A Judgment against Trinity awarding Settle and the other Patient Care Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA and OMFWSA;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: October 22, 2025

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
614-949-1181 – Telephone
614-386-9964 – Facsimile
mcoffman@mcoffmanlegal.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR SETTLE AND THE PATIENT CARE EMPLOYEES**